UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————————

| | | |
|---|---|---|
| JOAN ROTH, | : | No. 5:15-cv-1192 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, | : | |
| Defendant. | : | |

———————————————————————————

## MEMORANDUM
**Defendant's Motion for Summary Judgment, ECF No. 19 - Granted**

**Joseph F. Leeson, Jr.**                                    **February 23, 2016**
**United States District Judge**


## I.      INTRODUCTION

On March 9, 2015, Plaintiff filed this action against her former employer, the Social

Security Administration ("SSA"), alleging age discrimination in violation of the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634.  Presently pending is

Defendant's Motion for Summary Judgment which, for the reasons set forth herein, will be

granted.

## II.     BACKGROUND

### A.      Procedural History

Plaintiff initiated this action on March 9, 2015, alleging that she was discriminated

against by her employer, the SSA, when it failed to promote her and, instead, promoted a

significantly younger employee with less experience in violation of the ADEA.  Compl., ECF

No. 1.  Defendant, the Commissioner of the SSA, filed an Answer to the Complaint on May 26,

2015.  Answer, ECF No. 5.

On January 4, 2016, Defendant filed a Motion for Summary Judgment. Def.'s Mot. Summ. J., ECF No. 19. Defendant asserts that the SSA selected another employee, Kristin Carl, for the promotion based on legitimate, nondiscriminatory reasons. Id. 16-19. Further, Defendant argues that Plaintiff cannot adduce evidence that these reasons are pretext. Id. at 19-21. Plaintiff filed a response on January 21, 2016, Pl.'s Resp. Def.'s Mot. Summ. J., ECF No. 20, and Defendant's Reply was filed on February 9, 2016, Def.'s Reply Mot. Summ. J., ECF No. 22.

### B.      Undisputed Facts

The undisputed facts are as follows:

### A. Background

### The Social Security Administration and Level 1 vs. Level 2 Field Offices

1. The Social Security Administration ("SSA") is divided into ten regions. Ex. 1 (Stradtman Dec.) at ¶ 5.

2. The Philadelphia Region encompasses five Mid-Atlantic states plus Washington, D.C. and includes approximately 133 field offices. Ex. 1 (Stradtman Dec.) at ¶ 6.

3. At all relevant times, the Regional Commissioner in charge of the Philadelphia Region was Terry Stradtman. Ex. 1 (Stradtman Dec.) at ¶ 1.

4. The Philadelphia Region is divided into six Areas. Ex. 1 (Stradtman Dec.) at ¶ 7.

5. At all relevant times the Area Director of Area 1 of the Philadelphia Region was James Riley. Area Director Riley directly reported to Regional Commissioner Stradtman. Ex. 1 (Stradtman Dec.) at ¶ 8.

6. In June and July of 2012, Area 1 of the Philadelphia Region included 21 field offices, including the West Chester, Pennsylvania field office (the "West Chester Office"). Ex. 1 (Stradtman Dec.) at ¶ 9.

7. Each SSA field office is classified as a Level 1 field office or a Level 2 field office, based on size and demographics of the population served and the geographic area served by the field office. Ex. 1 (Stradtman Dec.) at ¶ 10.

8. Level 1 field offices are typically larger than Level 2 field offices. Ex. 1 (Stradtman Dec.) at ¶ 11.

9. The highest ranking manager in either a Level 1 or a Level 2 field office is the District Manager. Ex. 1 (Stradtman Dec.) at ¶ 12.

10. The District Manager of a Level 1 field office is a GS-14* position, and the District Manager of a Level 2 field office is a GS-13 position. Ex. 1 (Stradtman Dec.) at ¶ 13.

> *The General Schedule (GS) is a classification and pay system widely used throughout the federal government. It has 15 grades, from GS-1 (lowest) up to GS-15 (highest). <u>See</u> https://www.opm.gov/policy-data-oversight/pay-leave/pay-systems/general-schedule

11. Many of the duties of a GS-13 District Manager are the same as a GS-14 District Manager, including day-to-day management of field office operations. Ex. 2 (Riley Dep.) at 65:8-66:25; Ex. 5 (Stradtman Dep.) at 18:6-22.

12. GS-14 District Managers have additional administrative duties and additional involvement at the Area level. Ex. 2 (Riley Dep.) at 65:8-66:25; Ex. 5 (Stradtman Dep.) at 18:6-22.

13. Prior to 2012, the West Chester Office was a Level 2 field office. Ex. 2 (Riley Dep.) at 20:18-21:16.

### The West Chester Field Office District Manager Position

14. The Philadelphia Region reviewed the classifications of its field offices in 2012. Ex. 1 (Stradtman Dec.) at ¶ 14.

15. As a result of that review, the Philadelphia Region upwardly reclassified four Level 2 field offices to Level 1: the West Chester Office, plus Fairfax, Virginia; Rockville, Maryland; and Greenbelt, Maryland. Ex. 1 (Stradtman Dec.) at ¶ 15.

16. As a result, the District Manager positions in charge of each of those four reclassified field offices, including the West Chester Office, were upwardly reclassified from GS-13 District Managers to GS-14 District Mangers. Ex. 1 (Stradtman Dec.) at ¶¶ 15, 17; Ex. 2 (Riley Dep.) at 20:18-21:16.

17. Kristin Carl became the GS-13 District Manager of the West Chester Office on or about March 13, 2011, and remained in that position at all times leading up to the reclassification of the West Chester Office in 2012. Ex. 2 (Riley Dep.) at 61:16-62:17.

B. **The Application and Selection Process for the GS-14 District Manager of the West Chester Field Office.**

18. The West Chester Office GS-13 District Manager position held by Ms. Carl was upwardly reclassified as a GS-14 position and announced as a competitive job opening to SSA employees ("the GS-14 West Chester District Manager Position"). Ex. 3 (Brown Dec.) at ¶¶ 5-6.

19. The SSA opened Vacancy Announcement Number (VAN) 159 for the GS-14 West Chester District Manager Position from June 4, 2012 to June 15, 2012. Ex. 3 (Brown Dec.) at ¶ 7; Ex. 4 (Vacancy Announcement).

20. Area Director Riley was the selecting official for the GS-14 West Chester District Manager Position. Ex. 3 (Brown Dec.) at ¶ 8; Ex. 2 (Riley Dep.) at 79:1-18; Ex. 6 (Riley Aff.) at ¶¶ 5A, 6A.

21. Regional Commissioner Stradman was the concurring official for the GS-14 West Chester District Manager Position. Ex. 3 (Brown Dec.) at ¶ 9; Ex. 5 (Stradman Dep.) at 19:18-21:7; Ex. 2 (Riley Dep.) at 79:1-18; Ex. 6 (Riley Aff.) at ¶¶ 5A, 6A.

22. As the concurring official, Regional Commissioner Stradman was responsible for approving Area Director Riley's selection. Ex. 5 (Stradman Dep.) at 19:18-21:7.

23. Area Director Riley was born in 1951, and was 60 years old in June and July of 2012. Ex. 2 (Riley Dep.) at 11:25-12:11.

24. Regional Commissioner Stradman was born in 1955 and was 57 years old in June and July of 2012. Ex. 5 (Stradman Dep.) at 8:4-5.

. . . .

26. SSA Human Resources forwarded the Merit Promotion Certificate identifying the 13 eligible candidates, along with the applications they submitted, to Area Director Riley. Ex. 3 (Brown Dec.) at ¶11; (Riley Aff.) at ¶ 8A.

27. Kristin Carl, the incumbent GS-13 District Manager of the West Chester Office, applied for the GS-14 West Chester District Manager Position and was one of the 13 applicants on the Merit Promotion Certificate. Ex. 3 (Brown Dec.) at ¶ 12; Ex. 7 (Carl Experience and Qualifications Statement).

28. Plaintiff Joan Roth applied for the GS-14 West Chester District Manager Position and was one of the 13 applicants on the Merit Promotion Certificate. Ex.3 (Brown Dec.) at ¶ 13; Ex. 8 (Roth Experience and Qualifications Statement).

4

. . . .

31. To make his selection for the GS-14 West Chester District Manager Position, Area Director Riley considered the Merit Selection Certificate listing the qualified candidates, the Experience and Qualifications Statement submitted by each of the qualified candidates, feedback from the candidates' immediate supervisors, and his personal knowledge of the candidates from his years of experience working in Area 1 of the SSA. Ex. 2 (Riley Dep.) at 54:5-20, 77:15-78:25; 113:6-114:4.

. . . .

### Kristin Carl

37. Selectee Kristen [sic] Carl was born on June 26, 1976. In July 2012, Ms. Carl was 36 years old. Ex. 3(A) (Merit Promotion Certificate).

38. Ms. Carl began working for the SSA in 1998 in a GS-7 position and received several promotions over the course of the next 14 years of service at the SSA. Ex. 7 (Carl Experience and Qualifications Statement).

39. On or about March 13, 2011, Area Director Riley promoted Ms. Carl from her then GS-12 management position into the position of GS-13 District Manager of the West Chester Office. Ex. 2 (Riley Dep.) at 61:20 - 64:21.

40. As the GS-13 District Manager of the West Chester Office, Ms. Carl managed 24 office employees and one out-stationed Area Director's office employee. Ex. 7 (Carl Experience and Qualifications Statement).

41. While Ms. Carl was the GS-13 District Manager of the West Chester Office, Eileen Cooper was Ms. Carl's first-line supervisor and Area Director Riley was Ms. Carl's second line supervisor. Ex. 2 (Riley Dep.) at 65:8-19; 156:21-157:8.

42. Eileen Cooper completed and submitted the supervisory recommendation form for Ms. Carl. See Ex. 2 (Riley Dep.) at 156:21-157:8; Ex. 14 (Ms. Carl's recommendation submitted by Ms. Cooper).

43. Area Director Riley considered the recommendation that Ms. Cooper submitted for Ms. Carl. See Ex. 2 (Riley Dep.) at 156:21-157:8; Ex. 6 (Riley Aff.) at ¶¶ 11A, 13A.

44. Ms. Cooper gave Ms. Carl the highest possible summary recommendation, "highly recommend". Ex. 14 (Ms. Carl's recommendation submitted by Ms. Cooper).

45. In her recommendation of Ms. Carl, Ms. Cooper stated, "I have no reservations about Kristen's [sic] ability to perform the job of a level 1 Manager." Ex. 14 (Ms. Carl's recommendation submitted by Ms. Cooper).

46. In her recommendation of Ms. Carl, Ms. Cooper stated that "I actually think it might be a disadvantage to the staff and the established team to remove her [as District Manager] at this time." Ex. 14 (Ms. Carl's recommendation submitted by Ms. Cooper).

47. Ms. Cooper stated on the recommendation form that Ms. Carl's "ability to lead is evident from the progress she has made since occupying the District Manager position in the West Chester office. She established herself as a leader in a very short time period." Ex. 14 (Ms. Carl's recommendation submitted by Ms. Cooper).

48. Ms. Cooper stated on the recommendation form that Ms. Carl succeeded as a leader in the West Chester Office even though "she encountered a somewhat challenging environment" created by management turnover within the office. Ex. 14 (Ms. Carl's recommendation submitted by Ms. Cooper).

49. Ms. Cooper stated that Ms. Carl "has outstanding communication skills." Ex. 14 (Ms. Carl's recommendation submitted by Ms. Cooper).

50. Ms. Cooper consistently gave Mr. Riley good reports about Ms. Carl during Ms. Carl's tenure as the GS-13 District Manager of the West Chester Office. Ex. 2 (Riley Dep.) at 82:4-13.

51. Ms. Cooper's good reports about Ms. Carl's performance, and Ms. Cooper's written recommendation, were consistent with Mr. Riley's own observations of the performance and morale of the West Chester Office under Ms. Carl's leadership. Ex. 2 (Riley Dep.) at 81:20-82:13.

**Joan Roth**

52. Ms. Roth was born in 1951 and was 60 years old in June and July of 2012. Ex. 13 (Roth Dep.) at 9:23-24.

53. Ms. Roth began working for the SSA in December 1972. Ex. 13 (Roth Dep.) at 11:21-23.

54. In August 2006, Ms. Roth was promoted to Assistant District Manager, GS-13, in the Agency's Easton, Pennsylvania Field Office (Easton Field Office). Ex. 13 (Roth Dep.) at 14:6-15:2.

55. The Easton Office was a Level 1 field office. Ex. 2 (Riley Dep.) at 26:11-18.

56. At all relevant times, Karen Batson was the GS-14 District Manager of the Easton Field Office, and Ms. Roth was the GS-13 Assistant District Manager of the Easton Field Office. Ms. Batson was Ms. Roth's first-line supervisor. Ex. 13 (Roth Dep.) at 14:18-15:1.

57. At all relevant times, Area Director Riley was Ms. Batson's first line supervisor and Ms. Roth's second-line supervisor. Ex. 13 (Roth Dep.) at 30:7-14.

58. Easton Field Office District Manager Karen Batson was born in 1952 and was 59 years old in June and July of 2012. Ex. 10 (Batson Dep.) at 10:11-12.

59. As Assistant District Manager of the Easton Field Office, approximately six or seven Easton Field Office employees reported to Ms. Roth. Ex. 13 (Roth Dep.) at 35:6-12. Area Director Riley considered Ms. Roth to be overall a hard-working and successful manager. Ex. 2 (Riley Dep.) at 50:18-24, Ex. 6 (Riley Aff.) at ¶ 13A.

60. Ms. Roth has never worked in the West Chester Office. Ex. 13 (Roth Dep.) at 45:6-46:19.[1]

61. In June and July of 2012, Ms. Roth did not know how the West Chester Office was organized. Ex. 13 (Roth Dep.) at 45:6-46:19.

62. In June and July of 2012, Ms. Roth did not know anyone at the West Chester Office. Ex. 13 (Roth Dep.) at 45:6-46:19.

63. As of June and July of 2012, Ms. Roth had never managed any of the employees in the West Chester Office. Ex. 13 (Roth Dep.) at 45:6-46:19.

64. As of June and July of 2012, Ms. Roth had no knowledge of the workloads in the West Chester Office. Ex. 13 (Roth Dep.) at 45:6-46:19, 47:9-12.

65. It is helpful for a manager to know the employees that she manages. Ex. 13 (Roth Dep.) at 60:3-11.

66. In mid-2012, Ms. Batson submitted the recommendation form to Area Director Riley for Ms. Roth, based on her impression of Ms. Roth's work performance as Assistant District Manager of the Easton Field Office. Ex. 11(Ms. Roth's recommendation submitted by Ms. Batson).

67. Ms. Batson's overall recommendation of Ms. Roth was "recommend," not "highly recommend." Ex. 11 (Ms. Roth's recommendation submitted by Ms. Batson).

68. Ms. Roth does not believe that there was anything discriminatory about Ms. Batson's recommendation. Ex. 13 (Roth Dep.) at 90:7-123 ("Q. Do you believe

---

[1] Defendant responds that the statements in paragraphs 60-67 and 83-84 are "Admitted in part; denied in part." However, it is clear from Plaintiff's explanation as to what is being denied that these statements are admitted in full as written. See Pl.'s Answer Def.'s Stmt. Facts, ECF No. 20.

that there's anything discriminatory about the recommendation that you received from Karen Batson . . . .? A. No.").

. . . .

71. Between spring of 2011 and summer of 2012, Ms. Batson was concerned that Ms. Roth "would not fill me in on things, which I thought is important in our relationship" and otherwise "stayed to herself". Ex. 10 (Batson Dep.) at 25:14-26:2.

. . . .

73. Area Director Riley received verbal feedback from Ms. Batson about Ms. Roth's performance in the Easton Office prior to the selection of the GS-14 West Chester Office District Manager Position. Ex. 2 (Riley Dep.) at 121:2-22.

. . . .

77. Prior to the selection process for the GS-14 West Chester Office District Manager Position, Ms. Batson communicated her concerns to Area Director Riley that Ms. Roth was not attending staff meetings. Ex. 10 (Batson Dep.) at 33:16-19.

78. Prior to the selection process for the GS-14 West Chester Office District Manager Position, Ms. Batson probably communicated her concerns to Area Director Riley that Ms. Roth did not keep Ms. Batson adequately informed. Ex. 10 (Batson Dep.) at 33:16-21.

79. Prior to the selection process for the GS-14 West Chester Office District Manager Position, Ms. Batson communicated to Area Director Riley about Ms. Roth's conflict with another employee in the Easton Office, Vicky Stevens. Ex. 10 (Batson Dep.) at 34:4-36:10.

. . . .

82. Area Director Riley visited all of the field offices in Area 1 at least twice per year while he was Area Director. Ex. 2 (Riley Dep.) at 27:3-18; Ex. 13 (Roth Dep.) at 123:19-124:13.

83. Ms. Roth was absent multiple times when Area Director Riley visited the Easton Office for his regular prescheduled visits in 2011 and 2012. Ex. 6 (Riley Aff.) ¶ 13A; Ex. 10 (Batson Dep.) at 38:18-41:7; Ex. 13 (Roth Dep.) at 123:14-124:13.

84. As Assistant District Manager of the Easton Office, Ms. Roth's absence was conspicuous. Ex. 6 (Riley Aff.) at ¶ 13A; Ex. 10 (Batson Dep.) at 38:18-41:7.

**Area Director Riley Selected Ms. Carl and Regional Commissioner
Stradtman Concurred**

85. Area Director Riley selected Ms. Carl as his first choice to fill VAN 159 for
the GS-14 West Chester Office District Manager Position. Ex. 5 (Stradtman Dep.)
at 21:4-7; Ex. 6 (Riley Aff.) at ¶¶ 5A, 6A; Ex. 3(A) (Merit Promotion
Certificate).[2]

86. Area Director Riley selected Ms. Carl because he felt that she had the best
combination of skills for the position. Ex. 2 (Riley Dep.) at 82:4-83:13; Ex. 6
(Riley Aff.) at ¶ 11A.

87. In selecting Ms. Carl, Area Director Riley considered that she was "highly
recommended" by her supervisor for the position, and she had demonstrated
successful performance as West Chester GS-13 District Manager. Ex. 2 (Riley
Dep.) at 80:14-21, 82:4-13; Ex. 6 (Riley Aff.) at ¶¶ 11A, 13A.

88. In selecting Ms. Carl, Area Director Riley considered that she received
consistently positive feedback in her position as West Chester GS-13 District
Manager, both from her supervisor and employees of the West Chester Field
Office. Ex. 2 (Riley Dep.) at 80:14-21, 82:4-13; Ex. 6 (Riley Aff.) at ¶¶ 11A,
13A.

89. In selecting Ms. Carl, Area Director Riley considered that she already had
success leading the staff of the West Chester District Office and was familiar with
the office's workloads and employees. Ex. 2 (Riley Dep.) at 67:1-19.

. . . .

91. [Two spreadsheets summarizing the candidates' management experience and
supervisory recommendations were compiled. Area Director Riley] shared these
spreadsheets with Regional Commissioner Stradtman. Ex. 2 (Riley Dep.) at
139:17-141:23; see Ex. 12 (Management Experience Spreadsheets).

92. Regional Commissioner Stradtman considered and discussed each of the
thirteen candidates for the GS-14 West Chester District Manager Position with
Area Director Riley, including Ms. Carl and Ms. Roth. Ex. 5 (Stradtman Dep.) at
19:18-22:2; 33:10-21.

. . . .

95. Following [a discussion between Regional Commissioner Stradtman and Area
Director Riley,] Regional Commissioner Stradtman concurred with Area Director
Riley's selection of Ms. Carl. Ex. 5 (Stradtman Dep.) at 21:4-7.

---

[2] Plaintiff admits paragraphs 85-89 to the extent that they comport with the deposition testimony.
See Pl.'s Answer Def.'s Stmt. Facts.

. . . .

### D. Other SSA promotions show that Age Discrimination played no role in Ms. Roth's non-selection for the West Chester GS-14 District Manager Position.

**Area Director Riley Regularly Promoted SSA employees who were over 55 years old.**

99. Area Director Riley was the selecting official for ten GS-14 positions in the three years between June of 2010 and June of 2013 ("Riley's GS-14 selections"). Ex. 3 (Brown Dec.) at ¶¶ 16-18.

100. Eight of Area Director Riley's ten GS-14 selections during that period were over 55 years old at the time he selected them. Two were over 60. Ex. 3 (Brown Dec.) at ¶¶16-18.

101. In seven out of ten of Area Director Riley's GS-14 selections, he chose the selected candidate over one or more candidates that were at least 10 years younger than the selectee. Ex. 3 (Brown Dec.) at ¶¶ 16-18.

102. Area Director Riley selected the oldest candidate three times, but selected the youngest candidate available just once (when he selected Ms. Carl for the West Chester Office Position).** Ex. 3 (Brown Dec.) at ¶¶ 16-18.

> **This excludes the one instance of the ten selections where there was only one applicant.

. . . .

**Joan Roth Was Not Selected For Ten GS-14 Positions between January of 2010 and July of 2012.[3]**

104. The GS-14 West Chester District Manager Position was one of twelve GS-14 District Manger positions that Ms. Roth applied for between January of 2010 and July of 2012. Ex. 3 (Brown Dec.) at ¶¶ 19-23.

105. Ms. Roth was selected for just one of those twelve positions when, in 2010, she was selected for a temporary executive development program. She was not selected for the other eleven positions. Ex. 3 (Brown Dec.) at ¶¶ 19-23. There was

---

[3] Plaintiff did not respond to Defendant's statement of undisputed facts paragraphs 104-109. In the absence of a response and it appearing that these statements contain many of the same facts admitted in paragraphs 99-103, these statements will be deemed undisputed. See Fed. R. Civ. P. 56(e)(2) (proving that "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion").

no selectee for one of the positions, leaving ten positions for which Ms. Roth applied but another candidate was selected. Ex. 3 (Brown Dec.) at ¶¶ 19-23.

106. Six of those ten selections were for permanent GS-14 District Manager positions. Ex. 3 (Brown Dec.) at ¶¶ 19-23.

107. The selectee in eight of those remaining ten selections was over 55 years old. In seven of those selections, the selectee was within a year of Ms. Roth's age or older. Ex. 3 (Brown Dec.) at ¶¶ 19-23.

108. In 2015, Ms. Roth was eventually selected as the GS-14 District Manager of the Easton field office. Ex. 3 (Brown Dec.) at ¶ 24.

. . . .

Def.'s Stmt Facts, ECF No. 19. Additionally, "[t]he Merit Selection Principles contained with [sic] 5 U.S.C. § 2301(b) apply to competitive vacancies such as VAN 159 with the SSA." Pl.'s Stmt Facts ¶ 1, ECF No. 20 (citing Exs. 1, 5), admitted by Def.'s Resp. Pl.'s Stmt Facts, ECF No. 22.

## III.   STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 257 (1986). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific

material facts which give rise to a genuine issue.  Fed. R. Civ. P. 56; Celotex, 477 U.S. at 324;

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the

non-moving party "must do more than simply show that there is some metaphysical doubt as to

the material facts").  The party opposing the motion must produce evidence to show the

existence of every element essential to its case, which it bears the burden of proving at trial,

because "a complete failure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323; see also Harter v.

G.A.F. Corp., 967 F.2d 846, 851 (3d Cir. 1992).  "Inferences should be drawn in the light most

favorable to the non-moving party, and where the non-moving party's evidence contradicts the

movant's, then the non-movant's must be taken as true."  Big Apple BMW, Inc. v. BMW of N.

Am. Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993).

## IV.   ANALYSIS[4]

---

[4] Initially, the Court denies Plaintiff's request to strike the declarations of Terry Stradtman, James Riley, and Karen Batson as improper under Rule 56(c)(4).  See Pl.'s Resp. Def.'s Mot. Summ. J. 12 n.1 (citing Def.'s Mot. Summ. J. at Exs. 1, 6, 15).  Contrary to Plaintiff's suggestion, the declaration of Terry Stradtman, stating: "I declare under penalty of perjury that the foregoing is true and correct," is sufficient.  See Phillis v. Harrisburg Sch. Dist., 430 Fed. Appx. 118, 122 (3d Cir. 2011) (explaining that "[u]nsworn declarations are permissible at the summary judgment stage if they conform to 28 U.S.C. § 1746's requirement that declarants state that the contents of their declarations are true, subject to penalty of perjury" (citing Fed. R. Civ. P. 56(c)); 28 U.S.C. § 1746 (stating that the following format satisfies the statute: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).").  Further, to the extent the affidavits of James Riley and Karen Batson, which state: "I hereby solemnly swear or affirm" that "this statement . . . is true, complete, and correct to the best of my knowledge and belief," make no reference to the penalty of perjury, see Hughes v. Eitner, No. 05-463, 2007 U.S. Dist. LEXIS 53029, at *2-3 (W.D. Pa. July 10, 2007) (determining that an affidavit, in which the subscriber swears that the facts contained in the affidavit are true and correct to the best of his knowledge but with no mention of the penalty of perjury, fails to substantially meet the requirements of 28 U.S.C. § 1746 and may not be considered), Defendant has supplemented the affidavits to comply with the statute, see Def.'s Reply Mot. Summ. J. Exs. B and C.  See Fed. R. Civ. P. 56(e)(1) (allowing the Court to provide a party with an opportunity to properly support an assertion of fact).

"The ADEA prohibits age discrimination in employment decisions against persons who are at least 40 years of age."  Kelly v. Drexel Univ., 94 F.3d 102, 104 (3d Cir. 1996) (citing 29 U.S.C. § 623(a)(1)).  Under the McDonnell Douglas[5] framework, the plaintiff must, first, make out a prima facie case of discrimination, after which "the burden of production shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for the action."  Connors v. Chrysler Fin. Corp., 160 F.3d 971, 974 and n.2 (3d Cir. 1998).  "At step three, the plaintiff can survive summary judgment only if he submits evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'"  Id. (quoting Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108 (3d Cir. 1997)).

"In order to establish a prima facie case of age discrimination for failure to promote, the plaintiff must establish that: (1) he is age forty or older; (2) he applied for and is qualified for the job; (3) despite his qualifications he was rejected; and (4) the employer ultimately filled the position with someone sufficiently younger to permit an inference of age discrimination."  Robinson v. Matthews Int'l Corp., 368 Fed. Appx. 301, 304 (3d Cir. 2010).  The burden at step two "is deemed satisfied if the employer introduces evidence that, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the challenged employment decision."  Robinson, 368 F. App'x at 304 (concluding that where the employer maintained that the plaintiff was "performing below expectations in his current position and that he lacked the leadership ability, initiative, and analytical skills necessary to perform as division controller, . . . these reasons would certainly be legitimate grounds not to promote [the plaintiff]" and that the

---

[5] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

burden of showing pretext shifted back to the plaintiff).  If the defendant satisfies its burden, then the plaintiff must point to "'some' evidence from which a factfinder could reasonably conclude that the defendant's proffered reasons were fabricated (pretextual)" in order to avoid summary judgment.  <u>Fuentes v. Perskie</u>, 32 F.3d 759, 764-65 (3d Cir. 1994).  "To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent."  <u>Id.</u> at 765.  "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons."  <u>Id.</u> (internal citations omitted).

For purposes of the instant Motion, Defendant admits that Plaintiff has made out a prima facie case of discrimination.  <u>See</u> Def.'s Mot. Summ. J. 16.  Accordingly, the burden shifts to Defendant to offer evidence of a legitimate, nondiscriminatory reason for its decision to promote Ms. Carl instead of Plaintiff.

### A.    Defendant's Legitimate, Nondiscriminatory Reasons

### *1.    Ms. Carl's Success in the West Chester Office*

Defendant admits that incumbency is not a requirement, but it was a factor because Regional Commissioner Stradtman and Area Director Riley believed that Ms. Carl's successful leadership experience in the West Chester Office as the GS-13 District Manager was indicative of her ability to lead the Office as the GS-14 District Manager.  They also believed that Ms. Carl's intimate knowledge of the West Chester Office's workloads and processes would allow

14

her to hit the ground running.  Def.'s Mot. Summ. J. 17.  Additionally, Ms. Carl was not only

noted to have "forged excellent working relationships with her entire staff," but the Level-One

Director opined that "[i]t might be a disadvantage to the staff and the established team to remove

her at this time."  Def.'s Mot. Summ. J., Ex. 12.  Defendant contends that these are legitimate,

nondiscriminatory reasons for selecting Ms. Carl for the promotion and not Plaintiff.

The Court agrees.  See Ebner v. STS Tire & Auto Ctr., No. 10-2241, 2011 U.S. Dist.

LEXIS 102006, at *12 (D.N.J. Sept. 9, 2011) (finding that the employer's decision not to offer

the plaintiff "the assistant manager position because it 'made a business decision to utilize

existing management employees at its Montclair location'" was a legitimate, nondiscriminatory

reason for its hiring decision).  Accordingly, the burden shifts to Plaintiff to submit evidence to

discredit this proffered reason.

Plaintiff submits that Defendant added new requirements to the job vacancy by

considering Ms. Carl's work in the West Chester Office because she was the only candidate who

could have met such requirements.  Pl.'s Resp. Def.'s Mot. Summ. J. 10-13.  Plaintiff suggests

that these considerations demonstrate favoritism and are completely arbitrary, and that they

violate the Merit Selection Principles at 5 U.S.C. § 2301.  Id. at 10-16.  Plaintiff further

complains that Defendants do not discuss the Merit Selection Principles.  Id. at 17.

Plaintiff's claim that consideration of Ms. Carl's experience in the West Chester Office

violates the Merit Selection Principles is unfounded.  This factor does not concern any

constitutionally protected activity or class, nor is the consideration of specific job experience

arbitrary.  Moreover, the Merit Selection Principles govern federal personnel management

practice.  They do not provide for a private cause of action.  Weber v. Henderson, 275 F. Supp.

2d 616, 621 (E.D. Pa. 2003).  Section 2301 is part of the Civil Service Reform Act ("CSRA"),

15

which "provides a comprehensive claims procedure for government employees."  Alasevich v. Usaf Reserve, No. 95-CV-2572, 1997 U.S. Dist. LEXIS 3861, at *20 (E.D. Pa. Mar. 26, 1997). Plaintiff's attempt to tie the Merit Selection Principles to her age discrimination complaint is wholly misplaced.  Therefore, Defendant has offered a legitimate, nondiscriminatory reason for its decision and Plaintiff has failed to show that a reasonable factfinder would disbelieve it and thereby infer that age discrimination was more likely than not a motivating or determinative cause.

### 2.     *Ms. Carl's Stronger Supervisor Recommendations*

For the reasons just discussed, Defendant has met its burden of showing a legitimate, nondiscriminatory reason for its decision and it need not provide another.  However, because Defendant offers a second basis for its decision, the Court will address this proffered reason.

Defendant points out that Ms. Carl received a stronger supervisory recommendation than did Plaintiff, and that Plaintiff's supervisor expressed concerns over her interpersonal and leadership skills.  Defendant contends that these are legitimate, nondiscriminatory reasons for selecting Ms. Carl for the promotion and not Plaintiff.  Specifically, Ms. Carl received the highest recommendation of "highly recommended," while Plaintiff was only "recommended." Def.'s Mot. Summ. J., Ex. 12.  Also, there were no negative comments in Ms. Carl's supervisory feedback, but Plaintiff was noted to sometimes demonstrate "a lack of flexibility, and has come across as demanding to her team members."  Id.

Again, the Court finds that Defendant has met its burden of providing legitimate, nondiscriminatory reasons for promoting Ms. Carl instead of Plaintiff.  See Walters v. Kempthorne, No. 2004-09, 2008 U.S. Dist. LEXIS 118872, at *3 (D.V.I. May 16, 2008) (finding that the employer offered legitimate nondiscriminatory reasons for not promoting the plaintiff, to

wit, the promoted employee "had superior interpersonal skills and was 'better for the office in the long run'").

In response, Plaintiff claims that she was shocked to learn about the nature of the recommendation by Karen Batson, her District Manager, because she expected to be highly recommended.  Pl.'s Resp. Def.'s Mot. Summ. J. 12-13.  Plaintiff suggests that the negative comments are pretext because she received a "Q" award from her coworkers for exceptional interpersonal communication skills.  Id.

Plaintiff does not dispute that Ms. Carl received stronger supervisory recommendations. Rather, Plaintiff merely disagrees with her own recommendation, which is not evidence of discrimination.  See Robinson, 368 F. App'x at 306 (determining that simply because the plaintiff thinks he is more qualified for a position does not entitle him to the position or show discriminatory animus on the part of the employer).  To the extent Plaintiff alleges that the negative comments are pretext because she received a "Q" award from her coworkers, Plaintiff has not demonstrated the recommendation's inconsistency because the "Q" award was issued in 1997, fifteen years before the recommendation was prepared.  Def.'s Mot. Summ. J., Ex. 8. Consequently, Plaintiff has failed to meet her burden of offering evidence from which a factfinder could reasonably conclude that the recommendations, and Defendant's reasons for denying Plaintiff a promotion, were fabricated.

### B.    Lack of Evidence of Pretext

After review, it is determined that the record is devoid of any evidence of age discrimination or pretext, making summary judgment proper.  See Ekhato v. Rite Aid Corp., 529 F. App'x 152, 156 (3d Cir. 2013) (concluding that the "lack of evidence raising a genuine fact dispute material to determining pretext, and the lack of evidence in the record sufficient to

17

support a finding of pretext, made summary judgment proper"). At her deposition, when asked, "[w]ere there any statements made to you that would lead you to believe that you were not selected for the West Chester district manager position based on your age?" Plaintiff answered "No." Pl. Dep. 71:14-19, Def.'s Mot. Summ. J., Ex. 13. When asked, "[w]ere there any statements made to others, that you're aware of, that would lead you to believe that you were not selected for the West Chester district manager position based on your age?" Plaintiff again answered "No." Pl. Dep. 71:20 – 72:2. Accordingly, Plaintiff offers nothing but conclusory allegations that she was denied a promotion based on her age, which do not create a genuine issue of material fact. See Boyd v. Citizens Bank of Pa., Inc., No. 2:12-cv-00332, 2014 U.S. Dist. LEXIS 70210, at *65-66 (W.D. Pa. May 22, 2014) (determining that the plaintiff's "speculative assertions, unsupported by evidence of record, do not demonstrate pretext precluding summary judgment").

Moreover, Defendant's hiring and promotion practices in the years surrounding the challenged failure-to-promote decision confirm the absence of pretext. See McDonnell Douglas Corp., 411 U.S. at 804-05 (holding that "[o]ther evidence that may be relevant to any showing of pretext includes . . . petitioner's general policy and practice with respect to minority employment"); Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 542 (3d Cir. 1992) ("Statistical evidence of an employer's pattern and practice with respect to minority employment may be relevant to a showing of pretext."). Plaintiff admits that between June 2010 and June 2013, Area Director Riley was the selecting official for ten GS-14 positions. Eight of those ten selections were of employees over fifty-five years of age. In seven of those eight vacancy selections, there were at least three and up to twelve candidates that were not selected who were younger than the selectee, and of those younger candidates not selected, there was at least one

and up to seven that were at least ten years younger than the selectee.  Def.'s Stmt Facts ¶¶ 99-104.[6]

Consequently, Defendant's Motion for Summary judgment is granted.  A separate Order will be issued.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[6] Defendant also provides evidence that between January 2010 and July 2012, Plaintiff applied for twelve GS-14 District Manager Positions and was selected for only one.  Def.'s Stmt Facts ¶¶ 104-105.  The selectee for eight of ten of those positions was over fifty-five years of age, and all but one of those selectees was within a year of Plaintiff's age.  Id. at ¶107.  However, because Defendant does not include the ages of the candidates not selected, the Court will not consider this evidence.  See Molthan v. Temple University-of Commonwealth System of Higher Education, 778 F.2d 955, 963 (3d Cir. 1985) (finding statistical evidence meaningless when incomplete).